## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JOSE ANTONIO CAMACHO,
Individually, and JOSE ANTONIO
CAMACHO and DANIELA TORRES
as Surviving Parents and Administrators
of the Estate of LEONARDO
CAMACHO, Deceased,

                Plaintiffs,

v.

TEXAS ROADHOUSE HOLDINGS,
LLC,

                Defendant.

CASE NO. 1:20-cv-03931-ELR

## PLAINTIFFS' BRIEF ON APPORTIONMENT OF DAMAGES

COME NOW Plaintiffs, by and through their undersigned counsel of record and, in response to the Court's Order on Trial Matters requesting submission of briefs on apportionment of damages, shows the Court as follows:

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

This Court's Order on Trial Matters requested the parties submit briefs on apportionment issues. "Specifically, the Parties shall indicate whether questions of apportionment should appear on the verdict form and, if so, how those questions should be presented." (Doc. 136 at 4). For the reasons set forth *infra*, Plaintiffs

contend that the jury verdict form must give the jury the opportunity to apportion "fault" to Katie Pancione, Leonardo Camacho and Jose Camacho, separately. Plaintiffs accept and adopt the verdict form apportionment section – solely as that form relates to apportionment – submitted by Defendant. (*See* Doc 108-14 at 2) (Attachment I-2 to Pretrial Order).

There is a difference between the jury's *verdict* and the *judgment* that the Court will ultimately enter. If the jury verdict finds Texas Roadhouse liable in any percentage, the *judgment* entered by the Court in this case should not be reduced by any amount of fault apportioned to other nonparties. That, however, does not alter the jury verdict form or the jury's apportionment of fault.

## II. <u>ARGUMENT AND CITATION OF AUTHORITY</u>

A. <u>The Jury Should Apportion Fault Between Leonardo Camacho, Jose Camacho, Katie Pancione and Texas Roadhouse Holdings LLC.</u>

1 <u>The Jury Must Consider and Apportion Fault to Katie Pancione.</u>

Georgia's apportionment statute, in relevant part, dictates that the fault of Katie Pancione, Jose Camacho and Leonardo Camacho must be determined by the jury. The statute describes when a jury would have the right to apportion fault against a nonparty (like Katie Pancione).

> Negligence or fault of a nonparty *shall* be considered if the plaintiff entered into a settlement agreement with the nonparty *or* if a defending party gives notice not later than 120 days prior to the date of trial that a nonparty was wholly or partially at fault.

O.C.G.A. § 51-12-33(d)(1) (2020) (emphasis added).  Subsection (d)(2) sets out the procedural method for a defendant to give notice. Defendant timely and properly filed notice of its intent to "seek non-party apportionment of fault against Katie Pancione" pursuant to this statute. (Doc. 66 at 1). Therefore the jury "shall" apportion fault to Katie Pancione.

Moreover, Katie Pancione is *required* to be on the jury verdict form, even if Defendant withdraws its notice of nonparty fault, by virtue of her prior settlement with Plaintiffs.  As shown *supra*, Georgia's apportionment statute is mandatory—a nonparty's fault "***shall*** be considered if the plaintiff entered into a settlement agreement with the nonparty." O.C.G.A. § 51-12-33(d)(1) (2020) (emphasis added). Plaintiffs entered into a settlement agreement with nonparty Katie Pancione.  Critically, the statute says a jury must apportion fault when a settlement has been entered ***"or"*** pursuant to the notice Defendant provided.  *Id.*  This either/or language means that if one condition is satisfied, the jury shall apportion fault even if the other condition is not satisfied.  Here the settlement is sufficient to make apportionment mandatory.  Whether because of the settlement or because of Defendant's filed notice, Katie Pancione "shall" be apportioned fault by the jury.

Critically, Georgia's apportionment statute distinguishes between "fault" for apportionment, and "liability" for judgment.  The statute allows apportionment against

a nonparty even if they could not have been named as a party in the current lawsuit. O.C.G.A. § 51-12-33(c) (2020) ("[I]n assessing percentages of fault, the trier of fact **shall consider** the fault of all persons . . . who contributed to the alleged injury or damages, regardless of whether the person . . . was, or could have been, named as a party to the suit." (emphasis added)). The statute also makes it explicit that an assessment of "fault" does not subject a nonparty to any legal liability. O.C.G.A. § 51-12-33(f)(2) (2020).

The Georgia Supreme Court has interpreted the statute to allow apportionment of fault to any nonparty who could have any potential liability in tort, even if the nonparty's potential liability is not the same as the claims in the suit. "That includes not only the plaintiff himself and defendants with liability to the plaintiff, but also every other tortfeasor whose commission of a tort as against the plaintiff was a proximate cause of his injury, regardless of whether such tortfeasor would have actual liability in tort to the plaintiff." *Zaldivar v. Prickett*, 774 S.E.2d 688, 697 (Ga. 2015). *Zaldivar* clarified that "fault" under the apportionment statute materially differed from whether a nonparty could have any legal liability for the specific claims at issue in the case. Here, Katie Pancione has or had potential tort liability to Plaintiffs based on her negligent drunk driving. The settlement makes her a mandatory nonparty for the jury to apportion fault. It matters not that she could not be liable under the Dram Shop Act. As such, she *shall* be placed on the verdict form and the jury can apportion fault to her.

2. <u>The Jury Must Consider and Apportion Fault to Each Plaintiff.</u>

Defendant also indicated in the Pretrial Order that it intends to ask the jury to determine "whether Plaintiffs are to some degree responsible" for their injuries and death. (Attachment H-2 to Consolidated Pretrial Order, Doc. 108-12 at 2). Similarly, Defendant pled as an affirmative defense in its Answer that Plaintiffs may have some fault for their injuries under the doctrine of comparative negligence. (Answer, Eighth Affirmative Defense, Doc. 3 at 3).

The apportionment statute thus makes it mandatory that the jury "***shall*** determine the percentage of fault of the plaintiff." O.C.G.A. § 51-12-33(a) (2020). The jury verdict form should provide the jury with the opportunity to apportion fault between Jose Camacho, Leonardo Camacho, Katie Pancione and Texas Roadhouse Holdings LLC. Defendant submitted a proposed verdict form in the Pretrial Order that contains a section apportioning fault among each individual Plaintiff, Katie Pancione and Defendant. (*See* Attachment I-2 to Pretrial Order, Doc 108-14 at 2). For the jury verdict form, Plaintiffs consent to and adopt this section of the jury verdict form submitted by Defendant.

B. <u>The Jury's Apportionment of Fault Against Katie Pancione Will Not Impact the Liability of Defendant.</u>

The jury's mandatory apportionment of fault to Ms. Pancione will not result in a reduction of Defendant's *liability* in this case. In 2005, the Georgia General Assembly struck the state's apportionment statute and inserted a new code section in

its place. Tort Reform Act of 2005, No. 1,§ 12, 2005 Ga. Laws 1, 15. In relevant part, the new statute provided:

> Where an action is brought against *more than one* person for injury to person or property, the trier of fact, in its determination of the total amount of damages to be awarded, if any, shall . . . apportion its award of damages among persons who are liable according to the percentage of fault of each person.

O.C.G.A. § 51-12-33(b) (2005) (emphasis added).

Because this action was filed in 2020 and is being brought against only one defendant, Georgia's apportionment statute does not allow or require the Court to reduce the damages a jury renders in its verdict when entering the judgment. *Alston & Bird, LLP v. Hatcher Mgmt. Holdings, LLC*, 862 S.E.2d 295, 300 (Ga. 2021). In *Hatcher*, the Georgia Supreme Court interpreted subsection (b) of the apportionment statute according to its plain meaning to allow apportionment of damages only "[w]here an action is brought against *more than one* person for injury to person or property." *Id.* at 296–97. Applying this plain language to a legal malpractice action against one defendant, the Supreme Court of Georgia explained, "[b]y its plain language, the phrase at the outset of subsection (b) — 'where an action is brought against more than one person' — limits the application of subsection (b) to an action brought against at least two defendants." *Id.* at 300. Accordingly, because this case was brought against only one defendant, the jury's award will not be subject to a reduction in **damages** under subsection (b).

After this case was filed, the General Assembly amended the apportionment statute "to authorize apportionment of damages in single-defendant lawsuits." Act of May 13, 2022, No. 876, 2022 Ga. Laws 802, 802 (flush language). As amended, this section now provides for apportionment of fault and reduction of damages according to those percentages for nonparty fault "[w]here an action is brought against one or more persons." *Id.* § 1, 2022 Ga. Laws at 802; O.C.G.A. § 51-12-33(b) (2022). The General Assembly provided that this amendment "shall apply to all cases filed *after* the effective date of this Act." Act of May 13, 2022, § 2, 2022 Ga. Laws at 802 (emphasis added).

Defendant has argued that the 2022 amendment to O.C.G.A. § 51-12-33 governs apportionment in this case. (Attach. H-2 to CPTO, Doc. 108-12 at 3). These arguments rely on the erroneous notions that in *Hatcher* the Georgia Supreme Court rewrote (instead of interpreted) Georgia's apportionment statute, but the 2022 amendment passed by the Georgia Assembly did not.[1] It also requires deliberately ignoring the legislature's plain intent to make the amendment effective only *after* the date of the amendment. The new law does not impact any case filed before May 13, 2022, including this case.

---

[1] Notably, the Supreme Court of Georgia's opinion in *Hatcher* was not even the first to interpret O.C.G.A. § 51-12-33(b) as written. *E.g.*, *Zaldivar*, 774 S.E.2d at 697 n.7 ("[I]t seems quite clear that subsection (b) is instead concerned with damages awarded in cases in which there is *more than one named defendant* with liability…." (emphasis added)).

Of course, the Supreme Court of Georgia did not rewrite the Code in holding that "more than one" means more than one. The *Hatcher* court simply applied the plain language of the statute as written. The Supreme Court of Georgia is the ultimate authority in interpreting state law. *In re Cassell*, 688 F.3d 1291, 1301 (11th Cir. 2012). "The General Assembly chose to exclude single-defendant cases from apportionment among non-parties . . . . [a]nd the judicial power we exercise today does not permit us to make a different choice." *Hatcher*, 862 S.E.2d at 301–02. Only the state legislature can amend Georgia's apportionment statute, and it did so two years after this case was filed. *See also AU Med. Ctr. v. Dale*, 908 S.E.2d 790, 793 n.5 (Ga. Ct. App. 2024) (cases filed before May 13, 2022, are subject to the statutory interpretation in *Hatcher*). Since Texas Roadhouse, LLC, is the sole defendant, it cannot seek a reduction in the *judgment* based on any fault apportioned in the jury's *verdict* to Katie Pancione, a nonparty.

Equally important for this issue, *Hatcher* distinguished between subsection (c), which mandates a jury to consider the ***fault*** of properly identified nonparties in all cases, and subsection (b), which did not allow a reduction of ***damages*** in one-defendant lawsuits. *See Hatcher*, 862 S.E.2d at 300 ("[S]ubsection (c) itself provides only that the trier of fact must consider nonparty fault when *determining percentages of fault.*" (emphasis in original)). Subsection (c) requires the jury to consider the fault of Katie Pancione, but subsection (b), as it existed at the time of this lawsuit, does not

allow the reduction of damages based on the jury's apportionment of fault to her as a nonparty. The only reduction in the jury verdict that could occur would be based upon fault apportioned to the Plaintiffs. [2]

In a recent U.S. District Court case, Magistrate Christopher Ray faced a similar issue in applying *Hatcher*. *Garvin v. Transam Trucking, Inc.*, No. CV 422-062, 2024 WL 1719918 (S.D. Ga. April 22, 2024) (slip op. attached as Ex. 1). That case involved a procedurally different posture, but the same question: whether a nonparty could be included for apportionment of fault on the jury verdict, even though *Hatcher* prevented the court from reducing the damages by the percentage of fault apportioned to the nonparty. *Id.* at *3. In that case, following the Georgia Supreme Court's consistent guidance that "fault" is different from liability, the district court allowed the defendant to name a nonparty on the jury verdict form, even though arguably *Hatcher* would have prevented that apportionment of fault from reducing the damages awarded. "Apportionment of nonparty *fault* in a single defendant case is not prohibited by the version of O.C.G.A. § 51-12-33(b) in effect when [plaintiff] filed his operative complaint." *Id.* at *4.[3] The decision properly understood that fault is apportioned by

---

[2]    Plaintiffs concede that *Hatcher* did not change subsection (a), which allows for the reduction in damages according to percentages of fault apportioned to the plaintiffs. This includes subsection (g) which provides for no recovery if the jury finds Plaintiffs are more than 50% at fault. Thus, if the jury apportions some percentage of fault to Plaintiffs less than 51%, then the Court would reduce the judgment against Defendant by that percentage of fault allocated by the jury.

[3]    *Garvin* involved the effort by the defendant trucking company in an automobile

the jury under subsection (c) of the statute, even if subsection (b) does not reduce the damages based on that fault.

Finally, the *Hatcher* issue of reduction of damages is not a jury decision. In *Garvin*, the court correctly noted that it could reserve a decision on the impact of *Hatcher* until after the jury verdict was reached, since the amount of the judgment was a legal issue for the Court to decide. *Id.* The Court determines the amount of the final judgment by considering applicable law related to apportionment, setoff, costs, and attorneys' fees. The Court could hold in abeyance the application of *Hatcher* until after the trial determined damages. That comports with the Federal Rules of Civil Procedure's guidelines for entering judgment after a jury returns a special verdict or general verdict with answers to written questions. *See* Fed. R. Civ. P. 58(b)(2)(A). Since it is mandatory that the jury apportion fault to Plaintiffs and Katie Pancione as well as Defendant, the jury will have to return a special, not a general verdict. After that verdict has been received, only then would the Court determine the amount of the judgment to enter.

The jury is entitled to apportion fault to plaintiffs and Katie Pancione. The apportionment statute mandates that the jury "shall" consider the fault of plaintiffs and

accident to apportion fault to a treating physician who it claimed committed medical malpractice on the plaintiff. 2024 WL 1719918, at *1. This fact pattern reinforces that Katie Pancione can be found at "fault" by the jury for her negligent drunk driving, even though the primary legal issue in this case is Texas Roadhouse's liability under the Dram Shop Act.

the properly noticed nonparty.  As the *Hatcher* court explained, O.C.G.A. § 51-12-33(b) (2020) merely prohibits the Court from reducing Texas Roadhouse's liability for the damages awarded based upon the jury's apportionment of fault.[4]

## III. CONCLUSION

The jury verdict form must allow the jury to consider the fault of each Plaintiff individually and Katie Pancione as well as Defendant. As the sole defendant in this action, Texas Roadhouse Holdings, LLC, cannot reduce the judgment on account of the fault—however substantial—of any nonparty.

Respectfully Submitted this 30th day of May, 2025.

*[Signature on the following page]*

---

[4] The Court did not specifically ask the parties to brief the issue of offset of the prior settlement with Katie Pancione, but Plaintiffs believe that issue is not one for the jury to decide and should not be part of any verdict form.  The right to offset the Pancione settlement will turn on whether the jury apportions fault to Pancione as a joint tortfeasor with Defendant.  *See Hatcher*, 862 S.E.2d at 300 n.2 (noting that, because apportionment does not apply, a lone defendant has a right of contribution from joint tortfeasors); *cf. Broda v. Dziwura*, 689 S.E.2d 319, 321 (Ga. 2010) (verdict against defendant not set off by settlement from party to whom jury did not apportion fault); *See, also, Knight v. Lowery*, 185 S.E. 2d 915 (Ga. 1971)(successive tortfeasor does not act in concert with another negligent party and cannot benefit from a prior settlement). Just as *Hatcher* instructs that the jury determines fault without regard to damages, the jury should also determine damages without regard to any right by Defendant to claim an offset.  The Court should determine that issue after the evidence is complete and a verdict is entered.

BUCK ROGERS LAW, LLC

/s/ *Brian D. Rogers*
BRIAN D. ROGERS
GEORGIA STATE BAR #612105

4355 COBB PARKWAY, SUITE J-564
ATLANTA, GEORGIA 30339
404-216-5978 (DIRECT)
buck@buckrogerslaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this day, I served the foregoing via the court's

electronic filing system to the following attorneys of record:

JAY M. O'BRIEN
JALISA STEVENS
COPELAND, STAIR, VALZ & LOVELL, LLP
191 PEACHTREE STREET NE
SUITE 3600
ATLANTA, GEORGIA 31401
jobrien@csvl.law
jstevens@csvl.law

JEREMIAH A. BYRNE
ANDREW M. PALMER
FROST BROWN TODD, LLC
400 WEST MARKET STREET
3200 PROVIDIAN CENTER
LOUISVILLE, KY 40202
apalmer@fbtlaw.com
jbyrne@fbtlaw.com

J. ANTONIO DELCAMPO
DELCAMPO & GRAYSON LLC
5455 CHAMBLEE DUNWOODY ROAD
DUNWOODY, GEORGIA 30338
tony@dcglawfirm.com

This 30th day of May, 2025.

BUCK ROGERS LAW, LLC

/s/ Brian D. Rogers
BRIAN D. ROGERS
GEORGIA STATE BAR #612105

# Exhibit 1

printed by rgrayson@dcglawfirm.com (Bar edition)

ID vLex: 1032110676

http://case-law.vlex.com/vid/garvin-v-transam-trucking-1032110676

# Garvin v. Transam Trucking, Inc.

**Jurisdiction:** United States , Federal , Georgia

**Parties:** GREGORY GARVIN, Plaintiff, v. TRANSAM TRUCKING, INC., Defendant.

**Decision Date:** 22 April 2024

**Court:** U.S. District Court — Southern District of Georgia

**Docket Number:** CV422-062

1

**GREGORY GARVIN, Plaintiff, v. TRANSAM TRUCKING, INC., Defendant.**

**No. CV422-062**

**United States District Court, S.D. Georgia, Savannah Division**

**April 22, 2024**

# ORDER

CHRISTOPHER L. RAY, UNITED STATES MAGISTRATE JUDGE

Before the Court are Plaintiff Gregory Garvin's Motion to Strike Defendant's Notice of Non-Party Fault, doc. 49, and Defendant TransAm Trucking, Inc.'s ("TransAm") Motion for Leave of Court to Amend Defendant's Answer to Plaintiff's Complaint, doc. 55. Both motions are ripe for disposition. *See generally* docket.

## I. BACKGROUND

Garvin filed this lawsuit invoking the Court's diversity jurisdiction and alleging injuries from a vehicle collision involving Garvin and Marlon Kelly, a truck driver for TransAm. *See* doc. 1 (Complaint); doc. 8 (Amended Complaint). Filed on March 21, 2022, Garvin's Amended Complaint named TransAm, Kelley, and RLI Insurance Company as *2 defendants; Kelly and RLI Insurance Company were later voluntarily dismissed. 2 *See* doc. 8; *see also* doc. 18 (dismissing RLI Insurance Company without prejudice); doc. 36 (dismissing Kelley without prejudice).

Garvin alleges he "suffered a severe and permanent spine injury requiring two surgeries" after Kelley backed a tractor-trailer into his parked vehicle. *See* doc. 8 at 3; *see also* doc. 42 at 1 ("Defendant acknowledges that its driver negligently backed into the Plaintiff's parked tractor at a loading dock facility."). TransAm answered and raised as an affirmative defense that "[any] injuries, losses, or damages alleged by Plaintiff were proximately caused or contributed to by a superseding and intervening cause" and also asserted "contributory/comparative negligence" "[t]o the extent as may be shown applicable by the evidence through discovery." Doc. 13 at 2-3 (Answer to Amended Complaint).

The original scheduling order gave the parties until June 10, 2022, to amend their pleadings. *See* doc. 21 at 1. That deadline was never altered, but discovery was otherwise extended several times between May 2022 and August 2023. *See* doc. 26 (Amended Scheduling Order); *3 doc. 34 (Amended Scheduling Order); doc. 38 (Amended Scheduling Order). Ultimately, TransAm's deadline to furnish its expert 3

witness reports was February 3, 2023. *See* doc. 34 at 1. On February 3, 2023, TransAm disclosed an expert witness report from Dr. Kevin Stevenson, dated January 22, 2023, wherein Stevenson opined that Garvin's doctor should never had proceeded with a laminectomy due to preexisting conditions in Garvin's spine that rendered the surgery unnecessary and inappropriate. *See* doc. 55-3 at 2-4. Stevenson was eventually deposed on June 20, 2023. Doc. 55-4 at 1. During his deposition, Stevenson opined-for the first time-that proceeding with the laminectomy constituted medical malpractice. *Id*. at 4-5. The parties did not depose Garvin's doctor, Dr. Karl Lozanne, until August 31, 2023. *See* doc. 55-1 at 9. Discovery closed on November 6, 2023. Doc. 38 at 1.

On November 16, 2023, TransAm filed a Notice of Non-Party Fault pursuant to O.C.G.A. § 51-12-33(d), notifying Garvin that it intended to show that Lozanne was "either wholly or partially at fault for any damages Plaintiff may have suffered." Doc. 42 at 1. TransAm contends that "the finder of fact should consider the fault of Dr. Lozanne for improperly choosing to proceed forward with the laminectomy surgery as *4 part of the causation analysis in this case." *Id*. at 2. TransAm relies on O.C.G.A. § 51-12-33(c), which provides that "[i]n assessing percentages of fault, the trier of fact shall consider the fault of all persons or entities who contributed to the alleged injury or damages, regardless of whether the person or entity was, or could have been, named as a party to the suit," to support its position the jury should consider Lozanne's alleged medical malpractice in determining causation. Doc. 42 at 2.

On January 12, 2024,[1] Garvin moved to strike TransAm's Notice of Non-Party Fault. Doc. 49. He argues that the Notice is inappropriate because TransAm did not raise apportionment of non-party fault pursuant to O.C.G.A. § 51-12-33 as an affirmative defense in its Answer. *See id*. at 3-4. He also argues that apportionment is not permissible in this case because it is a single defendant case brought before O.C.G.A. § 51-12-33 was amended to allow apportionment of damages in single defendant cases. *See id*. at 4-8.

Not only did TransAm respond to Garvin's Motion to Strike, *see* doc. 61, but on January 12th-and seemingly in response to Garvin's argument *5 that apportionment of non-party fault was not properly raised as an affirmative defense-TransAm moved for leave to amend its Answer to include the non-party fault of Lozanne as an affirmative defense. *See* doc. 55; *see also* doc. 55-5 at 2, 4 (Proposed Amended Answer). TransAm argues that good cause exists to allow the out-of-time amendment because the basis for the amendment could not have been discovered until after the deadline to amend

pleadings ran. *See* doc. 55-1 at 8-9. It also argues that it has met the liberal standard governing amendment under Rule 15 of the Federal Rules of Civil Procedure. *Id.* at 9-13. Garvin opposes, in part because TransAm did not move to amend sooner and in part because, as argued in his Motion to Strike TransAm's Notice of NonParty Fault, doc. 49, amendment would be futile if apportionment of damages is impermissible in this case. *See* doc. 64.

Garvin's motion to strike, doc. 49, and TransAm's motion for leave to amend, doc. 55, are intertwined. The Court will resolve Garvin's *6 motion to strike before turning to 6 TransAm's motion for leave to amend, but the analysis of each motion will reference the analysis for the other.

## II. MOTION TO STRIKE

"[M]otions to strike are disfavored and infrequently granted." *Purdee v. Pilot Travel Centers, LLC*, 2009 WL 423976, at *1 (S.D. Ga. Feb. 19, 2009).[2] Garvin moves to strike TransAm's Notice of Non-Party Fault for two reasons: (1) TransAm did not raise non-party fault as an affirmative defense in its answer; and (2) apportionment of damages is not permissible in this case. *See* doc. 49 at 3-8. The Court addresses each of these arguments in turn.

First, O.C.G.A. § 51-12-33(d) requires defendants who wish to have the negligence or fault of a nonparty considered by the trier of fact to "give[] notice not later than 120 days prior to the date of trial that a nonparty was wholly or partially at fault." However, federal courts in Georgia have held that the notice requirement does not negate Federal *7 Rule of Civil Procedure 8(c)'s requirement that all affirmative defenses be expressly 7 stated in a defendant's answer. *See Cooper v. Marten Transp., Ltd.*, 2014 WL 11517830, at *3-*4 (N.D.Ga. May 23, 2014). Because TransAm did not specifically "raise Non-Party Apportionment as a defense," Garvin argues the defense is waived and the Notice should be struck. Doc. 49 at 3.

As an initial matter, it is not clear that stating that "[any] injuries, losses, or damages alleged by Plaintiff were proximately caused or contributed to by a superseding and intervening cause" and asserting a "contributory/comparative negligence" defense was insufficient for TransAm to raise a non-party fault affirmative defense. *See* doc. 13 at 23; *cf. Cooper*, 2014 WL 11517830, at *4 (finding that the defendants had not raised non-party fault as an affirmative defense when they failed "to expressly plead

*comparative fault* in their Answer" (emphasis added)). Regardless, Rule 8(c) requires only that a plaintiff be placed on *notice* as to any issues or defenses that may be raised at trial. *See Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988); *cf. Kirk v. Jefferson Cap. Sys., LLC*, 2023 WL 7388910, at *1 (M.D. Ala. Nov. 8, 2023) ("[It] appears *8 that the Eleventh Circuit has not extended the *Twombly/Iqbal* plausibility 8 standard to affirmative defenses.").

> When a plaintiff has notice that an affirmative defense will be raised at trial, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice. And, when the failure to raise an affirmative defense does not prejudice the plaintiff, it is not error for the trial court to hear evidence on the issue.

*Hassan*, 842 F.2d at 263. Here, Garvin had notice that TransAm would likely pursue an affirmative defense of non-party fault specifically regarding Lozanne's decision to perform surgery on Garvin. Stevenson, TransAm's expert, opined in a report produced on February 3, 2023, that the July 8, 2020 laminectomy was "not necessary or appropriate" and "made [Garvin's] neck pain worse." Doc. 55-3 at 3-4. On June 20, 2023, Stevenson testified in his deposition that he believed Lozanne committed medical malpractice in proceeding with the surgery. Doc 55-4 at 4-5. He did so upon probing from Garvin's own counsel. *See id.* at 3. Stevenson's report and deposition "demonstrate that the parties were at least somewhat interested in whether" Lozanne's decision to proceed with the *9 laminectomy "was at all to blame for" Garvin's 9 condition. *Cooper*, 2014 WL 11517830, at *5.

Because Garvin had notice that TransAm would likely pursue a defense of non-party fault as to Lozanne's decision to proceed with surgery, he is not prejudiced by any failure to comply with Rule 8(c).[3] *Hassan*, 842 F.2d at 263. Therefore, "it is not error for the trial court to hear evidence on the issue." *Id.*; *see also Cooper*, 2014 WL 11517830, at *4-*5 (allowing defendants to proceed with apportionment of non-party fault in part because plaintiffs had notice that defendants might raise that defense); *Knieper v. Wright*, 2018 WL 11330169, at *4 (N.D.Ga. Dec. 18, 2018) (same). Additionally, for the reasons stated below, the Court will allow TransAm to file an amended answer. Therefore, Garvin's argument that the Notice of Non-Party Fault should be struck because TransAm "failed to raise Non-Party Apportionment as a defense" fails. *See* doc. 49 at 3-4.

Second, Garvin argues that the version of O.C.G.A. § 51-12-33(b) in effect when he filed his operative Complaint on March 21, 2022, does not *10 allow apportionment of damages in "tort actions brought against a single defendant." *Alston & Bird, LLP v. Hatcher Mgmt. Holdings, LLC*, 862 S.E.2d 295, 302 (Ga. 2021); *see also* doc. 49 at 4-8. Subsection (b) now allows apportionment of damages among all liable persons or entities "[w]here an action is brought against *one or more persons*," *see* O.C.G.A. § 51-12-33(b) (emphasis added), but until the statute was amended on May 13, 2022, it only allowed apportionment of damages among all liable persons "when an action is brought against *more than one person*." *See Alston & Bird, LLP*, 862 S.E.2d at 354 (quoting O.C.G.A. § 51-12-33(b)) (emphasis added). Though this action was brought against three defendants, *see* doc. 8, only one remains, and Garvin urges the Court to apply the Georgia Court of Appeals' interpretation of the old provision. *See* doc. 49 at 5-8. In a case decided after the Georgia Supreme Court's decision in *Alston & Bird*, the Georgia Court of Appeals held that whether a case "is brought" against a single defendant is determined by the number of defendants brought to trial, not the number of the defendants the case was initiated against. *See Georgia CVS Pharmacy, LLC v. Carmichael*, 865 S.E.2d 559, 570-71 (Ga.App. 2021) (barring apportionment of damages pursuant to O.C.G.A. § 51-12-33(b) on the *11 grounds that it was a single defendant case, even though the lawsuit was brought against multiple defendants, when only one remained at the time the case proceeded to trial) *aff'd on other grounds*, *Georgia CVS Pharmacy, LLC v. Carmichael*, 890 S.E.2d 209, 231 n.16 (Ga. 2023). Garvin argues that because only TransAm remains as a defendant in this case, the case "is [not] brought against more than one person," and apportionment of damages is barred under the old O.C.G.A. § 51-12-33(b). Doc. 49 at 4-8. If TransAm cannot apportion damages, Garvin argues, its Notice of Non-Party Fault should be struck.

But TransAm's "notice of nonparty fault concerns the apportionment of fault, not damages." *Dennis v. D&F Equipment Sales, Inc.*, 2016 WL 3753085, at *2 (M.D. Ga. Jul. 11, 2016). TransAm's Notice states only that:

> [T]he finder of fact shoulder consider the *fault* of Dr. Lozanne for improperly choosing to proceed forward with the laminectomy surgery as part of the causation analysis in this case. As provided under O.C.G.A. § 51-12-33(c), "[i]n assessing percentages of fault, the trier of fact *shall consider the fault of all persons or entities who contributed to the alleged injury or damages*, regardless of whether the person *12 or entity was, or could have been, named as a party to the suit."

Doc. 42 at 2 (emphasis added).

The apportionment of "fault" (which TransAm seeks) and the apportionment of "damages" (which Garvin opposes) are distinct. *See Alston & Bird, LLP*, 862 S.E.2d at 298-99 (analyzing the statutory text of O.C.G.A. § 51-12-33). O.C.G.A. § 51-12-33(c), which TransAm relies on in its Notice, "tells the trier of fact how to assess 'percentages of fault' that are to be used under other subsections of the [apportionment] statute, but it does not itself authorize any apportionment of damages." *Alston & Bird, LLP*, 862 S.E.2d at 299. The finder of fact must consider nonparty fault when determining percentages of fault, but whether the damages may then be reduced according to the percentages of fault is dependent on the applicability of subsection (b). *Id.* at 300. For example, in *Alston & Bird*, the jury apportioned fault for defendant Alston & Bird at 32%, plaintiff Hatcher Management Holdings at 8%, and non-party Maury Hatcher at 60% pursuant to subsection (c). *Id.* at 297.[4] Because *13 the case was only brought against one defendant, however, damages could only be reduced by 8%-plaintiffs share of the fault-rather than 68%-the combined fault of the plaintiff and non-party. *Id.* at 298; *see also* O.C.G.A. § 51-12-33(a) (requiring a reduction of damages proportional to the percentage of the plaintiff's fault).

That the damages could only be reduced by the plaintiff's share of fault did not necessarily invalidate the jury's apportionment of fault to a non-party. Again, the "determinations of 'damages' and 'fault' are distinct." *Alston & Bird, LLP*, 862 S.E.2d at 298. Apportionment of nonparty *fault* in a single defendant case is not prohibited by the version of O.C.G.A. § 51-12-33(b) in effect when Garvin filed his operative complaint. In so far as TransAm's Notice of Non-Party Fault seeks the apportionment of fault as to Lozanne, Garvin's argument that the Notice should be struck because the apportionment of damages may be prohibited fails. To the extent TransAm can prove that Lozanne breached "a legal duty in the nature of tort that [was] owed" to Garvin, "the breach of which is a proximate cause of his injury," TransAm may brought against more than one person ....," but explaining "apportioning fault, not damages, is the issue in this case." *Id.* at 543. *14 ask the jury to consider the fault of Lozanne in its causation analysis. *Zaldivar v. Prickett*, 774 S.E.2d 688, 694 (Ga. 2015) (defining "fault" under O.C.G.A. § 51-12-33(c)); *see also Dennis*, 2016 WL 3753085, at *2 (allowing the trier of fact to assign fault to a non-party under O.C.G.A. § 51-12-33(c) in a single defendant case). The Motion to Strike is, therefore, **DENIED**. Doc. 49. The implications of any assignment of fault by the jury to Lozanne, including whether any award of damages should be reduced pursuant to O.C.G.A. § 51-12-33(b), is not

currently before the Court. The parties remain free to raise the issue, at the appropriate time and in the appropriate manner, consistent with the presiding District Judge's trial management procedures.

## III. MOTION FOR LEAVE TO AMEND ANSWER

Apparently in response to Garvin's argument that TransAm should not be able to pursue apportionment of non-party fault pursuant to O.C.G.A. § 51-12-33(c) because it did not specifically raise the non-party fault of Lozanne as an affirmative defense its answer, TransAm moves for leave to amend its answer. Doc. 55. When a motion for leave to amend is filed after the deadline to amend pleadings as set forth in the scheduling order, the moving party "must first demonstrate good cause *15 under Rule 16(b) before [the Court] will consider whether amendment is proper under Rule 15(a)." *Sosa v. Airprint Sys., Inc.,* 133 F.3d 1417, 1419 (11th Cir. 1998). Per the Court's initial Scheduling Order, the deadline to amend pleadings was June 10, 2022. Doc. 21 at 1; *see also* doc. 55-1 at 5 (TransAm "acknowledges that the deadline previously imposed by this Court for filing Motions to Amend was June 10, 2022"). TransAm moved to amend its answer on January 12, 2024. *See* doc. 55. Therefore, TransAm must demonstrate good cause under Federal Rule of Civil Procedure 16(b) before the Court will entertain its arguments on the propriety of amending its answer under Rule 15. *See Sosa*, 133 F.3d at 1419.

### A. *Rule 16*

Good cause for an extension of a scheduling order's deadlines "exists if the schedule 'cannot reasonably be met despite the diligence of the party seeking the extension.'" *Green Island Holdings, LLC v. British Am. Isle of Venice (BVI) Ltd.*, 521 Fed.Appx. 798, 800 (11th Cir. 2013) (quoting Fed.R.Civ.P. 16 1983 advisory committee notes). Though the general inquiry is whether the moving party could have reasonably met the deadline it seeks to amend, courts may consider other factors in *16 determining a party's diligence, including: (1) whether the information providing the basis for the proposed amendment was available before the deadline to amend, *see Smith v. Sch. Bd. of Orange Cnty.*, 487 F.3d 1361, 1367 (11th Cir. 2007); *Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1318-19 (11th Cir. 2008); *Green Island Holdings*, LLC, 521 Fed.Appx. at 800; *Snadon v. Sew-Eurodrive, Inc.*, 859 Fed.Appx. 896, 897 (11th Cir. 2021); (2) the pendency of any motions for summary judgment at the time the party moves to amend

the pleadings, *see Smith*, 487 F.3d at 1367; (3) whether the Court had specifically given the movant an opportunity to amend outside the timeframe in the scheduling order earlier in the litigation, s*ee Green Island Holdings, LLC*, 521 Fed.Appx. at 799-800; and (4) "how soon the party moved to amend after discovering the information." *Snadon*, 859 Fed.Appx. at 897.

Garvin centers his opposition to amendment on TransAm's lack of diligence in requesting leave to amend. *See generally* doc. 64. He points out that TransAm did not move to amend its answer to include non-party fault as to Lozanne's decision to perform surgery until nearly a year after disclosing Stevenson's report. *See id.* at 1-2; *see also* doc. 55; doc. 55-3. Because Stevenson opined in the report that Lozanne should not have *17 proceeded with surgery, Garvin argues that the basis for amendment     17 existed as early as February 2023 and waiting to request leave to amend until January 2024 was not diligent. *See* doc. 64 at 2.

TransAm, on the other hand, argues it was diligent in attempting to comply with the deadline to amend in the initial Scheduling Order, but that it could not have met the June 10, 2022 deadline to amend pleadings because the particulars of its affirmative defense were not clear until discovery was well underway. *See* doc. 55-1 at 8-9. To demonstrate nonparty "fault" under O.C.G.A. § 55-12-33(c), a defendant must show that the non-party owed "a legal duty in the nature of a tort" to the plaintiff, the non-party breached that duty, and "the breach . . . [was] a proximate cause" of the plaintiff's injury. *Zaldivar*, 774 S.E.2d at 694. TransAm intends to show that Lozanne committed medical malpractice. *See* doc. 55-1 at 3. Under Georgia law, to support a medical malpractice claim, an expert must establish the applicable standard of care and causation. *See McDowell v. Brown*, 392 F.3d 1283, 1295-99 (11th Cir. 2004). Stevenson did not submit his report stating that the laminectomy was not "necessary or appropriate" and that it made Garvin's neck pain worse until January 22, 2023. *See* doc. 55-3 at 4-5. Stevenson did not explicitly *18 testify that he believed Lozanne     18 committed medical malpractice until June 20, 2023. *See* doc. 55-4 at 1, 4-5. The parties did not depose Lozanne until August 31, 2023. *See* doc. 55-1 at 9. TransAm argues that it did not have all the information it needed to determine whether it could raise non-party fault as to Lozanne until this time. *See id.* at 8-9.

The Court finds TransAm has demonstrated good cause under Rule 16(b). Its expert did not opine that Lozanne should not have performed the laminectomy until late January 2023, and it did not finish gathering information related to Lozanne and the

laminectomy until at least August 31, 2023. *See* doc. 55-1 at 9; doc. 55-3 at 4-5; doc. 55-4 at 1, 4-5. "[T]he basis for the proposed affirmative defense" was simply not "available before the deadline for amended pleadings." *Green Island Holdings, LLC*, 521 Fed.Appx. at 800; *see also Sosa*, 133 F.3d at 1419 (considering whether the basis for the amendment was available to the movant before the deadline for filing amended pleadings); *Smith*, 487 F.3d at 1367 (same); *Romero*, 552 F.3d at 1318-19 (same). The partial motion for summary judgment currently pending in this case was filed by TransAm itself and was "pending" for less than an hour before TransAm moved for leave to amend. *See generally* docket; *cf. Smith*, 487 F.3d at 1366-67 *19 (finding a lack of good cause when, among other things, movant filed his motion to amend one month after the nonmoving party filed a motion for summary judgment). Additionally, the Court has not ever specifically invited TransAm to amend its answer. *See generally* docket; *cf. Green Island Holdings, LLC*, 521 Fed.Appx. at 799-801 (noting that the Court had specifically invited the movant to replead months earlier and indicated then that would be the last opportunity the movant would have to amend). While TransAm could have filed for leave to amend before January 12, 2024, only four-and-a-half months passed between Lozanne's deposition and TransAm's motion to amend. *See* doc. 55; doc. 55-1 at 9. This delay is not so egregious as to be fatal. *Cf. Snadon*, 859 Fed.Appx. at 897 (finding a lack of diligence in seeking to amend when the information supporting the amendment was available more than eighteen months earlier).

TransAm could not have met the June 10, 2022 deadline to amend pleadings with any amount of diligence. *See Green Island Holdings, LLC*, 521 Fed.Appx. at 800. The Court therefore finds good cause pursuant to Rule 16(b) to amend the operative Scheduling Order, *see* doc. 48, and retroactively **EXTENDS** the deadline for Filing Motions to Amend or *20 Add Parties, *see* doc. 21 at 1, to permit TransAm to file its Amended Answer.

## B. *Rule 15*

Having found good cause under Rule 16(b), the Court now turns to whether TransAm should be allowed to amend pursuant to Rule 15(a). *See Sosa*, 133 F.3d at 1419. Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, courts should "freely give leave" to amend "when justice so requires." Fed.R.Civ.P. 15(a)(2). "[U]nless a substantial reason exists to deny leave to amend," the Court lacks discretion to deny TransAm leave to amend its Answer. *Shipner v. E. Air Lines, Inc.*, 868 F.2d 401, 406-07 (11th Cir.

1989). Courts consider several factors when determining whether allowing the amendment is appropriate, including undue delay, bad faith, or dilatory motive on the part of the movant; repeated failure to cure deficiencies; undue prejudice to the opposing party; and futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1340 (11th Cir. 2014).

TransAm has not previously amended its Answer, so there is no "repeated failure to cure deficiencies." *Foman*, 371 at 182; *see generally* *21 docket. Nor is there any 21 indication that TransAm is acting in bad faith or with a dilatory motive. *See* doc. 55-1 at 3 (explaining that TransAm did not seek leave to amend its Answer earlier because it believed the intervening cause and comparative negligence language in its Third and Tenth Defenses sufficiently addressed non-party fault); doc. 64 at 2-3 (opposing amendment under Rule 15 on futility grounds only). For the same reasons the Court found TransAm acted diligently under Rule 16(b), the Court finds that this amendment does not "follow[] undue delay[]." *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999). Allowing this amendment will also not cause undue delay. *See Id.* (finding that the district court did not abuse its discretion in denying a motion to amend when amendment would have "*caused* undue delay" (emphasis added)); *see also* doc. 55-1 at 7 n.4 (noting the discrepancy among courts as to whether "undue delay" refers to whether an amendment will result in undue delay or comes after undue delay). Furthermore, Garvin does not allege that he would be prejudiced by allowing TransAm to file its proposed Amended Answer, doc. 55-5. *See generally* doc. 64. For the same reasons the Court found Garvin was not prejudiced by any failure on TransAm's part to comply with Rule 8(c), the *22 Court finds that there is no risk of prejudice to Garvin in allowing TransAm to amend its answer. 22

Garvin's only argument for why amendment should not be permitted under Rule 15(a)(2) is that amendment would be futile "[f]or the reasons set forth in Plaintiff's Motion to Strike TransAm's apportionment defense." Doc. 64 at 2. But the Court has rejected these arguments, so amendment to clarify TransAm's affirmative defense is not futile.

Having found good cause to amend the operative scheduling order deadline, and finding no substantial reason to deny TransAm leave to amend its answer, the Court **GRANTS** TransAm's Motion for Leave of Court to Amend Defendant's Answer to Plaintiff's Complaint. Doc. 55. TransAm is **DIRECTED** to file a signed copy of its Amended Answer, *see* doc. 55-5, within 7 days of the date of this Order.

# IV. CONCLUSION

Garvin's Motion to Strike Defendant's Notice of Non-Party Fault is **DENIED**. Doc. 49. TransAm's Motion for Leave of Court to Amend Defendant's Answer to Plaintiff's Complaint is **GRANTED**. Doc. 55. Pursuant to Rule 16(b), the Court retroactively **EXTENDS** the deadline *23 for Filing Motions to Amend or Add Parties to seven 23 days after the entry of this Order. TransAm is **DIRECTED** to file a signed copy of its Amended Answer to Plaintiff's Amended Complaint, *see* doc. 55-5, within seven days of the date of this Order.

**SO ORDERED.**

---------

[1] January 12, 2024, was the deadline for filing all civil motions, excluding motions in limine. *See* doc. 48 at 2.

[2] Generally, "a motion to strike is only appropriately addressed towards matters contained in the pleadings." *Smith v. Se. Stages, Inc.*, 479 F.Supp. 593, 594 (N.D.Ga. 1977); *see also* Fed.R.Civ.P. 12(f). While TransAm's Notice of Non-Party Fault is not a pleading under Federal Rule of Civil Procedure 7(a), it concerns a potential defense which could have been included in an answer and federal courts in Georgia have previously addressed the merits of motions to strike notices filed pursuant to O.C.G.A. § 51-12-33(d). *See e.g., Haynes v. Lawrence Transp. Co.*, 2016 WL 1359185, at *5 (N.D.Ga. Feb. 1, 2016).

[3] Notably, Garvin does not even allege to have been prejudiced by TransAm's failure to specifically raise apportionment of non-party fault regarding Lozanne's decision to perform surgery as an affirmative defense in its Answer. *See* doc. 49.

[4] Prior to trial, the trial court granted Plaintiff's Motion to Strike Alston & Bird's notice of nonparty fault. *See Alston & Bird LLP v. Hatcher Management Holdings, LLC*, 785 S.E.2d 541, 543 (Ga.App. 2016). The Georgia Court of Appeals reversed, acknowledging that the then-governing O.C.G.A. § 51-12-33(b) "clearly and unambiguously limits apportionment of damages to cases '[w]here an action is

---------